Bouldin, J.
The question which has been re-argued in this cause, and the only question now open, arises on the instruction of the Circuit court to the jury, set out in the third bill of exceptions as follows ; “ That according to the face of the bonds the plaintiff was entitled to recover the amount named in each with interest as specified.” The two bonds or covenants are substantially in the same terms, except as to time of payment, and one of them is as follows :
*341 “12500.—Twelve months after date I bind myself, heirs, &c., to pay R. C. Craig twenty-five hundred dollars in currency at its specie Value with interest from date, for value received. Witness my hand and seal this 23d of June 1865. N. E. Caldwell. [Seal.]”
The question is, what is secured to be paid by this instrument ? What is its true construction ?
It will be observed, that we are not aided in the solution of this question, by any evidence of the cotemporaneous or subsequent construction of the bonds by the parties themselves, either by act or declaration. We are absolutely without information on that subject. We may infer, it is true, from the verdict of the jury, that considerable payments were made ; but neither party has thought proper to inform us, how, or in what currency, those payments were made. We are left to deal with the naked question of the construction of the papers on their face, aided only by the surrounding circumstances, so far as we are at liberty to notice them.
It will be remembered then, that the bonds in question were executed about two months after the close of the war between the United States and the Confederate States of America; when Confederate currency after great depreciation had become utterly worthless ; when specie was not in use as currency, and was rarely seen ; and before the paper currency of the United States had been introduced into general use amongst us. The people of the southern States had but little knowledge at that time of that currency ; but it was known to them, that it had been subject to great fluctuation in value, and had been, prior to that time, and was then, greatly depreciated. What it might become in the future, none could tell or even conjecture. Under such circumstances, it was both natural and reasonable, that both parties should desire and agree, that the character and value of the currency to be paid and received, should be distinctly understood between them. This was espe *342 daily important to the covenantee, who was parting with his land; being all that was left to a great majority of the southern people. He, at least, would be naturally solicitous to guard against selling it for worthless paper.
It will he further remembered, that the people of the South knew little or nothing at that time, about the operation and effect of the legal-tender acts and national currency laws of the United States ; and that there had been then, no judicial interpretation of those laws; huta disastrous experiencehad taughtthem to distrust a national paper currency. They did know, however, that the word ‘ ‘ dollar,” in the absence of some controlling statutory enactment, had, in law, always imported coin or specie; but they also knew that in the then condition of the country it was extremely difficult, in fact, well nigh impracticable, to procure specie in kind ; and that no prudent man, except in exceptional cases in large cities, would promise to pay it.
Such was the state of things under which the parties contracted; and the written contract shows that the covenantee sold his land for “ dollars ” generally, without providing in the contract in what kind of currency those “dollars” might be paid. He knew that the word “ dollars,” in the absence of some controlling statutory provision, imported coin or specie. But this, he also knew, it was almost impossible to obtain in kind ; and it was, therefore, highly important to both parties, to fix upon a more convenient medium of payment. Specie being unattainable, payment in “currency ” became a necessity. But as J. Anderson has well remarked in his opinion in this case, 21 Gratt. 132, 144, “ neither party was willing to risk the fluctuations of the currency.” To avoid these fluctuations, they determined that the “ dollars” mentioned in the contract—that is the coin .or specie—might he discharged “in currency,” not in .currency generally ; but in currency at a fixed and un-,changing value, to be agreed on between them ; and that *343 value was “ its specie value.” Now, the specie value of a note is a thing well understood, and about which it would seem there should he no difference. It is the amount of specie that note will command, or for which it can be exchanged. Were I to ask, what is the specie value to-day of a legal-tender or a national currency note for $100,1 should be told at once, about $87; that being about the amount in specie for which it could be exchanged. It is obvious then, that a debt of $100, payable “ in currency at its specie value,” could not be discharged by the payment to-day of $100 currency. To hold such a payment a discharge of the debt, would make the nominal value of the currency the same with its specie value, and thus render wholly inoperative, the most important words of the contract; those fixing the value of the currency, The true credit in such case, would be $87, the specie value of the currency, leaving a balance of $13 unpaid, to be discharged in currencyjin like manner. It seems to me that this is the only way by which we can give full effect to all the words of the bonds, and my opinion is, that the contract is in effect a contract for specie, to be paid not in kind, but in currency rated at its specie value ; that is to say, as much currency as shall be equal in value to the specie dollars promised to be paid.
But it has been objected to this construction, that it involves the necessity of an arbitrary punctuation, thereby changing the natural sense of the bonds. I do not think there is any force in the suggestion. The bonds as they appear in the printed record, are without punctuation, and to be read intelligibly, proper punctuation must be supplied. The parties had already, as we have seen, executed a covenant, by which the covenantor had obligated himself to pay to the covenantee a certain number of “ dollars” for his land. In this covenant the parties had stopped at the word “ dollars,” without saying in what medium or currency those “dollars” should *344 be paid. When they came to the execution of the bonds or covenants for the several payments, the following words were added after the word dollars, viz : “ in currency at its specie value” thus giving the privilege to the covenantor of making the payment in currency, but without reducting the value of the payment. When we look to these facts, it seems to me that the true understanding of the parties, and the grammatical structure of the instruments, require, that a comma should follow the word “ dollars,” leaving the additional words, “ in currency at its specie value,” to have their full force and meaning, without being weakened and disjointed by arbitrary punctuation.
When is the value of the currency to be ascertained ? Is it at the date of the covenant or on the day of payment ?
No principle of law is better established than this : that where there is a contract to pay or deliver paper currency, or any commodity on a particular day, and the day passes without payment, the day on which the contract is to be fulfilled, is the time to fix the value of the currency or" commodity ; and I see no reason to depart, in the case before us, from this just and well established rule.
In Beirne v. Dunlap, 8 Leigh 514, which was a case of a covenant to pay United States bank notes, the court say, “ Paper may rise or depreciate in value before the day of payment; and if the day passes when the contract is to be fulfilled, the measure of the obligee’s rights and the obligor’s liabilities is the value of the notes on that day, to be ascertained by the verdict of a jury and awarded in damages.”
This language was quoted and approved as law by the whole court in the recent case of Dungan v. Hunderlite, 21 Gratt. 149, and the principle was affirmed as settled law, by Judges Staples and Christian in the case now before us, on its former argument. Caldwell v. Craig, *345 21 Gratt. 132. See also Bearing's adm'x v. Rucker, 18 Gratt. 426, and the numerous cases there cited by Judge Joynes in his learned and able opinion.
I think the currency to be paid should be rated at its specie value on the day of payment; and my opinion is, that there was error in the instruction, to the prejudice, not of the appellant, but of the appellee; but as the latter does not complain of the judgment, but prefers it should stand unreversed, the same should be affimed.
Anderson, J.
The construction that the bonds upon which this suit was brought import an obligation, by one of them, to pay the value of twenty-five hundred gold dollars, and by the other, two thousand in currency, differs from that given them by both the prevailing and dissenting opinions at the first hearing, and also from the construction given to them by the judge of the Circuit court. It is a construction not claimed for them by the plaintiff in the court below, anywhere in the record, nor by his counsel here, so far as I remember, in the argument. Though in an oral opinion, at the last term, my Brother Christian indicated, I believe, that such was his construction. If it be the correct construction, that given by my Brother Moncure and myself is erroneous and ought to be renounced. If in error, I have no pride of opinion which could induce me to adhere to it, if convinced that it is an error. The opinions supporting the conflicting construction have received, as they are entitled to, my careful and candid consideration. And if these bonds, read in the light of the surrounding circumstances, show that the parties intended an obligation on the part of the plaintiff in error to pay the value of $4,500 gold dollars in currency, I will surrender my construction and adopt that, though it may be a hard bargain for the plaintiff in error. Bor if it was his bargain, fairly made, he must be held to it. But I would not give a forced or strained construction to the lan *346 guage, or alter the punctuation, or divide a sentence by the insertion of a comma where there was none, and in a place where the sense and the structure of the sentence, did not necessarily require it, to fix the hard bargain upon him. With these preliminary remarks, I come to the consideration of the question of construction.
Does the bond by its terms import such au obligation ? One of them is in these words: “Twelve months after date I bind myself heirs &c. to pay R. 0. Craig twenty-five hundred dollars in currency at its specie value with interest from date, for value received. Witness my hand and seal this 23d June 1865.” If the intention had been to make a gold contract, such as is contended, how easy it would have been to have so expressed it thus— “the value of twenty-five hundred gold dollars in currency at its specie value.” That language would have been unequivocal, and would have clearly expressed the contract which, it is contended, the bond given imports. Or if it had said twenty-five hundred gold dollars, in currencymt its specie lvalue, the language, though not so clear and explicit, might bear that construction. But it does not say “gold dollars.” Or if it had only denoted a pause in reading after “ dollars,” by inserting a comma there, it would have given ground for a plausible argument that the intention was that the obligor should pay the value of $2,500 gold dollars in currency at specie value. But such construction, it seems to me, in that case would be more plausible than sound. The unnatural pause after “dollars,” though the comma denoting it had been inserted, does not supply the omission of the words “the value of” just preceding the words “twenty-five,” or at least of the word “gold” just preceding “dollars.” The former or the latter must be either expressed or understood to convey the meaning supposed. And then, in either case, the words “at its specie value ” are surplusage and might be erased, and the sense would be precisely the same. Thus, “to pay *347 the value of twenty-five hundred gold dollars in currency,” where is the use of the words “at its specie value?” These words are wholly unnecessary to convey the supposed meaning. They are of no use. And so if it read “to pay twenty-five hundred gold dollars in currency,” the words “at its specie value” are wholly unnecessary. And without the insertion of those words, or at least without having the word “gold” understood, just preceding the word dollars, it does not necessarily import, even by retaining the words “ at its specie value,” and inserting a comma after the word “dollars,” an obligation to pay the value of twenty-five hundred gold dollars in currency. For you still have the amount, $2,500 (not in gold, for that is neither expressed nor understood), enumerated to be paid “in currency,” which is nothing more nor less than an obligation to pay $2,500 in currency, except so far as it is qualified by the terms “at its specie value,” the meaning of which and its use I attempted to show in the opinion which I have heretofore given in this case.
But what right have we to insert a comma after the word dollars? It is not to be found there in either of the bonds, as shown in the printed record, and it is not the natural place for it, according to the sense or structure of the sentence. The natural place for it is after the word currency, for that is the natural and grammatical division of the sentence, according to its sense and structure, so that it would read “ twenty-five hundred dollars in currency, at its specie value.” But I need not press this point further. I wish to remark, however, before leaving it, that there is an error committed in the report of this case in the printed sheets of 21 Grattan, by inserting a comma after the word dollars,, where none was put by the parties themselves, as shown by the printed record.
I will' now proceed to show that the construction contended for does not convey the intention and meaning *348 of these parties. These bonds and two others were given in pursuance, or in execution, of articles of agreement entered into between the parties for the sale and purchase of land. They evidence a sale of a tract of land by Craig to Caldwell, supposed to contain 1,000 acres more or less, for and in consideration of a tract containing 150 acres, which Caldwell was to convey to Craig, and of $6,500, payable as follows: $1,000 in six months from date, $2,500 in twelve months, $2,000 in two years, and $1,000 in three years, the interest on $2,000 for one year to be remitted. The article bears even date with the bonds—that is, June 23, 1865. There is no question that the bonds were given for these instalments, and that the contract of Craig to convey the land aforesaid to Caldwell was the only consideration of the bonds. And although the bonds and the article are of the same date, the presumption is that the article was first executed.
According to the legal effect of that article, what was the obligation of Caldwell, and how could he discharge it ? It was to pay in currency. It was an obligation to pay $6,500, which, under the law, he could discharge in legal tender notes—in other words, the paper cun’encv of the country—there being no difference in the commercial value of legal tenders and United States treasury notes of any issue, or national bank notes. How, is it credible that Caldwell, on the same day, and perhaps immediately after the execution of that agreement, would have given his bonds, in the execution of it, for fifty per ■cent more than he was required to pay by the articles ? In other words, that he would have obligated himself to pay $9,750, with interest thereon, when his contract was to pay $6,500 only, with interest? But this he did, if the construction of his bonds contended for is sound. It may not be exactly in those proportions. It may be for more or less. But the construction which I oppose would place him in the category of obligating himself to *349 pay the $6,500 at all events, and whatever might be the difference, at the time of payment, between the value of specie and a fluctuating and depreciated currency, in the fulfilment of articles of agreement just entered into, which required of him, as we have seen, only to pay $6,500 in currency. It is incredible that, in the execution of these bonds, such should have been the intention of the parties; and it is repulsive to every sense of justice and fair dealing.
But the conduct of the parties, and especially of the defendant in error, who never set up a pretense, so far as this record shows, that it was a gold contract; repels the idea that such was the understanding. Large payments have been made, so as to reduce the first three instalments of $5,500, with the accruing interest, to $1,902.59 at the date of the judgment, and no pretense ever heard of that it was a gold contract. Is it not too late now to set up such a pretension, and does not the conduct of the parties show, in confirmation of my interpretation of the language of the bonds, that they never designed it to be a gold contract.
The language of the bond requires no such construction, and as we have seen, it is not even plausible without giving it an unnatural punctuation, which was not given by the parties themselves. I do not think, therefore, that we should change the punctuation, supply words which were not employed by the parties, and make nugatory and unmeaning, and useless, words which they had employed, to place a construction upon the instrument which puts a hard bargain upon the obligor, repugnant to the plain terms and legal effect of the contract in the execution of which it was given, and to the whole conduct, pretensions and after dealings of the parties in relation to it.
It is true, that in the execution of the bonds there is some modification of the contract as to the medium of payment. That is plain from the face of them. And *350 it was entirely competent to the parties to make such modification. And it was very natural and necessary, as a precaution, to guard against the fluctuations of the currency, and was as important for one as the other, if they did not intend a contract of hazard. And according to our construction, they adopted the just and sensible standard of the then specie value of the currency. It not being a gold contract, solvable in currency at its specie value, and not being a contract solvable in currency without qualification (a conclusion in which four of us concur, and which I endeavored to maintain in my former opinion), we seem to be shut up to the conclusion that the obligation was to pay the sum named in currency at its then specie value, those words having been used with reference to the then present time, when the contract was entered into, and when the parties must be presumed to have known the value of currency in relation to specie as the standard. I am constrained, therefore, to adhere to that construction.
Christian, J. concurred in the opinion of Bouldin, J.
Moncure, P. concurred in the opinion of Anderson, J.
Christian, Staples and Bouldin, Js. concurred in affirming the judgment of the Circuit court. Moncure, P. and Anderson, J. were for reversing it.
Judgment appirmed.